# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JESSICA L. YOUNG, | Case No. 5:21-cv-00761 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRAION, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Jessica L. Young applied for social security disability benefits, and the Commissioner denied her application.  Following a hearing, an administrative law judge did so as well.  Plaintiff appealed, and the appellate council declined review, rendering the Commissioner's denial final.  Plaintiff seeks review in federal court.  For the reasons that follow, the Court **OVERRULES** Plaintiff's objections and **AFFIRMS** the Commissioner's denial of her application for disability benefits.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Jessica L. Young applied for disability benefits, alleging a disability onset date of May 1, 2016.  (ECF No. 10, PageID #173–79.)  The application was denied, and Ms. Young requested a hearing before an administrative law judge.  (*Id.*, PageID #180–82.)  After the hearing, the administrative law judge denied Ms. Young's application, and a request for review by the appeals council was also

denied, rendering the administrative law judge's decision the final decision of the Commissioner of Social Security. (*Id.*, PageID #58 & 69–86.)

### A. Relevant Medical Evidence

#### A.1. Physical Impairments

During an endocrinology follow-up appointment in 2017, Ms. Young was noted as having uncontrolled diabetes. (*Id.*, PageID #318.) Notes from that visit indicate that Ms. Young was positive for blurred vision, neuropathy, polyneuropathy, and microalbuminuria. (*Id.*, PageID #323.) A July 2019 appointment with Dr. Rachel P. Espiritu also noted Ms. Young's uncontrolled diabetes. (*Id.*, PageID #327.) During that examination, Ms. Young was positive for fatigue, visual disturbance, chest pain, leg swelling, constipation, polydipsia, polyuria, frequency and urgency for urination, arthralgias, back pain, joint swelling, myalgias, dizziness, weakness, numbness. (*Id.*, PageID #338–39.) In addition, Dr. Espiritu noted that Ms. Young had mental impairments, including behavioral problems and that Ms. Young appeared anxious and nervous. (*Id.*, PageID #339.)

In July 2018, Ms. Young met with Dr. Thomas Reilly from the Crystal Clinic for right ring finger catching. (*Id.*, PageID #374.) Ms. Young was assessed with trigger ring finger of the right hand and elected to proceed with surgery. (*Id.*, PageID #377.) Notes from the visit also indicate that Ms. Young suffered from severe arthritis in her left wrist. (*Id.*) Dr. Reilly performed surgery for release of trigger in the right ring finger and right index finger. (*Id.*, PageID #382.) Ten days later, Ms. Young saw Dr. Reilly for a post-surgery appointment and complained that she could not pick anything up without a sharp stabbing sensation. (*Id.*, PageID #384.)

Ms. Young was hospitalized at Summa Health from late-August to late-September 2018, following a mitral valve replacement.  (*Id.*, PageID #417.)  In addition to the mitral valve replacement, Ms. Young suffered from urinary tract infection, staphylococcal arthritis of the left shoulder, MSSA (methicillin-susceptible Staphylococcus aureus) bacteremia, coronary artery disease, single bypass graft, acute kidney injury, and uncontrolled diabetes.  (*Id.*, PageID #416.)  Ms. Young also has a history of methamphetamine abuse.  (*Id.*, PageID #417.)  In October 2018, Dr. Mark Smith considered Ms. Young to fall within Class IIIA of the New York Heart Association system for classifying heart failure, which limits physical activity and causes fatigue even when a person engages in less than ordinary activity.  (*Id.*, PageID #1157.)

In October 2018, Ms. Young was readmitted to Summa Health for a week for staphylococcus aureus bacteremia and chronic diastolic heart failure.  (*Id.*, PageID #935.)  A few days later, Ms. Young was readmitted to Summa Health due to mediastinal abscesses, chest pain, and hypertension following her mitral valve replacement.  (*Id.*, PageID #1098.)  Ms. Young underwent bilateral hand surgery for trigger fingers and arthritis in January 2019, and Dr. Mark Smith reported that her wounds became infected and seeded her left shoulder joint.  (*Id.*, PageID #1114.)

Ms. Young was hospitalized at Summa again in February 2019 for syncope and moderate malnutrition.  (*Id.*, PageID #1246.)  An MRI indicated a left paracentral disc protrusion at L5/S1 contacting the traversing left S1 nerve root, narrowing of the lateral recesses at L3/L4, and L4/L5, and mild multilevel degenerative changes.  (*Id.*,

PageID #1299.) One month later, Ms. Young was hospitalized for a stroke and moderate malnutrition. (*Id.*, PageID #1349.) Ms. Young was then released to a rehabilitation center and discharged a month later. (*Id.*, PageID #1493.) In August 2019, Dr. Yolanda Duncan at University Hospitals examined Ms. Young for a disability determination. (*Id.*, PageID #1655.) During that visit, Dr. Duncan opined that Ms. Young may have difficulty with work-related physical activities, such as standing for more than 30 minutes, climbing stairs, walking more than half a block, and sitting for more than 60 minutes. (*Id.*, PageID #1656.)

In November 2019, Ms. Young suffered another stroke. (*Id.*, PageID #1678.) During a doctor visit a month later, Dr. Smith indicated that Ms. Young was noncompliant with her medication, including insulin. (*Id.*, PageID #1731.) In June 2020, Dr. Smith completed a questionnaire for Opportunities for Ohioans with Disabilities Office for Disability Determination and indicated that Ms. Young had coronary artery disease without angina, diabetes with neuropathy, CREST syndrome, psoriasis, psoriatic arthritis, congestive heart failure, depression, and degenerative disc disease. (*Id.*, PageID #1754.)

### A.2. Mental Impairments

In April 2019, Ms. Young underwent a psychological evaluation by Dr. Robert Dallara. (*Id.*, PageID #1219.) The evaluation noted that there was insufficient evidence to advance a diagnosis, but offered diagnostic impressions of unspecified anxiety disorder, unspecified depression disorder, and stimulant related disorder. (*Id.*, PageID #1222.) In August 2019, Dr. Michael Lehv opined that Ms. Young had moderate limitations on carrying out detailed instructions, ability to maintain

attention and concentration for extended periods, ability to work in coordination and proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruption from psychologically based symptoms, and ability to respond appropriately in the work setting. (*Id.*, PageID #137–38.) Overall, Dr. Lehv concluded that, although Ms. Young's employment prospects were limited because of these impairments, she was not disabled. (*Id*, PageID #140.)

### A.3. Hearing Testimony

In 2020, an administrative law judge held a hearing to determine whether Ms. Young was disabled under the Social Security Act. (*Id.*, PageID #91). At the hearing, Ms. Young along with an impartial vocational expert testified. (*Id.*, PageID #111.)

Ms. Young testified that she became disabled on May 1, 2016, when she began experiencing arthritis and needed hand surgery. (*Id.*, PageID #101.) Ms. Young testified that, after her heart surgery and strokes, she became very weak and has neuropathy in her arms and legs. (*Id.*) Because of her heart surgery, her blood pressure is constantly low, causing dizziness and exhaustion. (*Id.*) Ms. Young also described her history of diabetes, which contributes to her fluctuating weight and constant feeling of weakness. (*Id.*, PageID #103–04.) Generally, Ms. Young is restricted in her ability to grasp and lift objects, limiting her ability to walk with a laundry basket and use stairs. (*Id.*) Although, Ms. Young admitted to a history of methamphetamine abuse, she has been drug-free for approximately one year. (*Id.*, PageID #102.) She has a difficult time doing laundry and mowing the yard, but notes she does light household chores. (*Id.*, PageID #104–05.) Ms. Young testified that her

grandson has called 911 for her twice. (*Id.*, PageID #105.) Finally, Ms. Young testified regarding her limitations with using her left and right wrist, inability to stand for longer than 15 minutes, inability to sit for longer than an hour, and inability to use a computer for more than 30 minutes without wrist pain. (*Id.*, PageID #108–10.)

The vocational expert, Timothy Whitford, testified to Ms. Young's past work as a telemarketer, cashier, and a shipping clerk and answered hypotheticals about what limitations would prevent a person from maintaining employment in these positions. (*Id.*, PageID #112–13.)

### B. Administrative Law Judge's Decision

The ALJ concluded that Ms. Young was not disabled under the Social Security Act. (*Id.*, PageID #86.) Specifically, after considering the evidence presented, the ALJ conducted the five-step analysis of Section 404.1520(a). 20 C.F.R. § 404.1520(a).

The ALJ found that Ms. Young had not engaged in substantial gainful activity since the alleged disability onset date. (*Id.*, PageID #74.) At step two, the ALJ found that Ms. Young has the following severe impairments: orthostatic hypotension, coronary artery disease, status-post single-vessel coronary artery bypass graft, cardiac impairment, lumbar degenerative disc disease, cervical degenerative disc disease, status-post cerebral vascular accident, osteoarthritis, left wrist, carpal tunnel syndrome, bilateral upper extremities, diabetes mellitus II with diabetic neuropathy, gastro-esophageal reflux disease, unspecified depressive disorder, unspecified anxiety disorder and methamphetamine abuse. (*Id.*)

6

At the next step, the ALJ found that Ms. Young did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 416.920(d), 416.925 and 416.926. (*Id.*, PageID #75.) Finally, the ALJ found that Ms. Young had the residual functional capacity to perform light work, so long as it does not involve climbing ladders, ropes, and scaffolds. (*Id.*, PageID #77.) Also, the ALJ found that Ms. Young could not participate in work with unprotected heights, moving mechanical parts, and operation of a motor vehicle. (*Id.*) Based on this residual functional capacity, the ALJ determined that Ms. Young could perform work if limited to the performance of simple, routine, repetitive tasks, completed in a setting free of a production rate pace. (*Id.*) Considering Ms. Young's age, education, work experience, and residual functional capacity, the ALJ concluded that Ms. Young is capable of making a successful adjustment to perform other work. (*Id.*, PageID #86.)

Determining that Ms. Young was not disabled within the meaning of the Social Security Act, the ALJ did not proceed to step five. (*Id.*, PageID #86.) The ALJ's decision became final when the Appeals Council declined further review. (*Id.*, PageID #58.)

    C.    **Plaintiff's Arguments**

Plaintiff challenges the Commissioner's decision on three grounds. First, she contends that the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers, making the decision in her case constitutionally defective because it was decided by an administrative law

7

judge who derived authority from the Commissioner. (ECF No. 15, PageID #1803–04.) Second, Plaintiff contends that the ALJ erred in step three of her analysis when she failed to include the combination of Ms. Young's severe impairments in her residual functional capacity. (*Id.*, PageID #1804–11.) Third, Plaintiff argues that the ALJ did not properly evaluate her symptoms as required by SSR 16-3p. (*Id.*, PageID #1811–13.)

## ANALYSIS

Under 42 U.S.C. § 405(g), the findings of an administrative law judge are conclusive if substantial evidence supports them. Therefore, the Court limits its review to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any legal errors de novo. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

### I. Constitutional Authority of the ALJ

Plaintiff takes issue with the structure of the Social Security Administration under the Constitution. In her view, by restricting the power of the President to remove the Commissioner only for cause, the removal provision of the Social Security Act violates the separation of powers, by extension making the authority that the

administrative law judge constitutionally defective. (ECF No. 15, PageID #1803). Put another way, because of the removal provision's unconstitutionality, any authority derived from the Commissioner is likewise unconstitutional. (*Id.*, PageID #1804.) In short, Plaintiff argues that remand for a new hearing is proper because the ALJ's authority was constitutionally defective.

The Court previously considered and rejected this argument in *Baumiller v. Commissioner of Social Security*, ___ F. Supp. 3d ___, No. 1:21-CV-01782, 2022 WL 4140248 (N.D. Ohio Sept. 13, 2022). There, the Court ruled that the unconstitutional removal provision is severable from the remainder of the Social Security Act. *Id.* at *6. Further, the Court held that although the Social Security Act contains an unconstitutional removal provision, it did not affect Mr. Saul's appointment as Commissioner of the Social Security Administration. *Id.* "As a result, there is no reason to regard any of the actions taken by the agency as void." *Id.* (quoting *Collins v. Yellin*, 141 S. Ct. 1761, 1787 (2021)). For these reasons, as more fully explained in *Baumiller*, the Court rejects Plaintiff's first claim of error.

## II. Step Three Evaluation of Physical and Mental Impairments

Plaintiff asserts that the ALJ erred when she failed to include the combination of Ms. Young's physical and mental impairments in her analysis of residual functional capacity. According to Plaintiff, her combination of impairments precludes her from performing work at the light level of exertion on a sustained and full-time basis. Because of this alleged err in the ALJ's analysis, Plaintiff argues remand is warranted. ([ECF No. 15](#), PageID #1811.)

In step three, the ALJ considers whether the claimant's impairments, or combination of impairments, is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. "If one has a 'listed impairment' that meets duration requirements there is an irrebuttable presumption of disability." *Bledsoe v. Barnhart*, 165 F. App'x 408, 410 (6th Cir. 2006) (citations omitted). Further, a claimant must satisfy all criteria in the listing. 20 C.F.R. § 404.1525(c)(3).

The Sixth Circuit holds that an ALJ's decision must contain sufficient analysis to allow for "meaningful judicial review" of the listing impairment decision. *Reynolds v. Commissioner of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). On review, the question is "whether the ALJ's decision not to find any limitations arising out of the condition is supported by substantial evidence." *Rose v. Commissioner of Soc. Sec.*, No. 2:14-CV-1901, 2015 WL 6735313, at *5 (S.D. Ohio Nov. 4, 2015), *report and recommendation adopted,* No. 2:14-CV-1901, 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015). In other words, the Court must consider whether substantial evidence supports the ALJ's decision finding that Plaintiff's physical and mental health limitations do not meet a listing set out in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Here, the Court determines that the ALJ provided sufficient evidence to support a finding that Plaintiff's physical and mental impairments did not satisfy the criteria for any listed impairment. The Court notes that the ALJ acknowledged that "[n]o treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." (ECF No. 10, PageID #75.)

10

Additionally, the ALJ considered whether Ms. Young's physical diagnoses and conditions met the severity of specified listed impairments and concluded that Plaintiff did not meet the requirements for any listing. (*Id.*, PageID #75–76.) Also, the ALJ considered Plaintiff's mental limitations and opined that Plaintiff's mental conditions did not cause two "marked" limitations, or one "extreme" limitation. (*Id.*, PageID #76.) In sum, the ALJ considered the listings Plaintiff could be eligible for and explained why Plaintiff's impairments, or combination of impairments, did not meet any specific listing. These findings are of such a character that "a reasonable mind might accept [it] as adequate to support a conclusion." *Rogers*, 486 F.3d at 241.

In essence, Plaintiff requests the Court to reweigh the evidence the ALJ considered. That is not the job of the Court. Instead, the Court only reviews whether a reasonable person could have come to the same conclusion as the ALJ. *Jones v. Commissioner of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Under this standard of review, the record supports the ALJ's decision finding that Plaintiff's physical and mental limitations do not meet a listing set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, the Court rejects the second issue Plaintiff raises.

## III. ALJ's Adherence to SSR 16-3p

Plaintiff maintains that the ALJ did not properly evaluate her symptoms under Social Security Ruling 16-3p. (ECF No. 15, PageID #1811–13.) Specifically, Plaintiff contends that the ALJ failed to articulate a reason for discrediting her testimony beyond a boilerplate paragraph. (*Id.*, PageID #1812.)

11

Under SSR 16-3p, the ALJ must evaluate the claimant's subjective symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record. Under the two-step process used to assess the limiting effects of a claimant's symptoms, a determination is first made as to whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. SSR 16-3p, 82 Fed Reg. 49462, 49463; *Rogers*, 486 F.3d at 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If that requirement is met, the second step is to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p, 82 Fed Reg. 49462, 49463; *Rogers*, 486 F.3d at 247. In undertaking this analysis, the ALJ considers objective medical evidence, a claimant's subjective complaints, information about a claimant's prior work record, and information from medical and non-medical sources. SSR 16-3p, 82 Fed Reg. 49462, 49464-66; 20 C.F.R. § 416.929(c)(3). In this analysis, relevant factors include the claimant's daily activities, types and effectiveness of medications, treatment received to address symptoms, and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Here, Plaintiff reiterates her medical history and descriptions of her physical limitations and asserts that, "the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Young's testimony was consistent with her symptoms." (ECF No. 15, PageID #1811). To support her argument that

12

the ALJ did not properly evaluate her residual functional capacity, Plaintiff points to Dr. Duncan's evaluation of her limited ability to perform work at the light level of exertion. (*Id.*, PageID #1812.) But "[a] Plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022).

Under the law of this Circuit, "credibility determinations with subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). "[W]hile an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record." *Zingale*, 2022 WL 824148, at *8.

The record shows that the ALJ properly evaluated Ms. Young's symptoms in accordance with SSR 16-3p. The ALJ completed step one by identifying medically determinable impairments that could reasonably produce her symptoms. These impairments included diabetic neuropathy in her hands and feet, arthritis in her hands and feet, the sequelae of open-heart surgery, the after-effects of stroke, right sided back pain, neck pain, long term depression, and hypotension. (ECF No. 10, PageID #78.) Next, the ALJ determined that these impairments could reasonably produce Ms. Young's symptoms. (*See id.*, PageID #78–82.) The ALJ completed step two of the analyses by evaluating the intensity and persistence of those symptoms to

13

determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult. Contrary to Plaintiff's assertion that "the ALJ failed to articulate any rationale beyond the boilerplate paragraph" (ECF No. 15, PageID #1812), the ALJ pointed out that "the claimant is able to attend to her own self-care, to perform household chores, cook, provide child care to her grandson during working hours. She spends a lot of time performing yard work, and episodically at least, has engaged in shoveling snow." (ECF No. 10 PageID #82.) The ALJ concluded that, "[w]hile none of these activities, considered in isolation, would warrant or direct a finding of 'not disabled'; when considered in combination, they strongly suggest that the claimant would be capable of engaging in the work activity contemplated by the residual functional capacity." (*Id*.) On this record, the Court cannot say that the ALJ's credibility analysis is deficient.

Accordingly, the Court determines that the ALJ properly evaluated Ms. Young's symptoms under Social Security Ruling 16-3p and that substantial evidence supports the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision denying benefits. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: December 9, 2022

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

15